UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
                                      :
WILLIAM DE JESUS,                     :
                                      :    08 Civ. 5804 (DLC)
                Plaintiff,            :
                                      :    OPINION & ORDER
        -v-                           :
                                      :
JOY ALBRIGHT, et al.,                 :
                                      :
                Defendants.           :
                                      :
--------------------------------------X

APPEARANCES:

For plaintiff:

William De Jesus, appearing pro se
01-A-4505
Auburn Correctional Facility
PO Box 618
Auburn, NY 13024

For defendants:

Jeb Harben
Assistant Attorney General
Office of the Attorney General
120 Broadway
New York, NY 10271-0332


DENISE COTE, District Judge:

        Plaintiff William De Jesus ("De Jesus"), proceeding pro se,

brings this action pursuant to 28 U.S.C. § 1983 against various

employees of the New York State Department of Correctional

Services ("DOC") in their individual capacities.[1]  De Jesus

---

[1]     Plaintiff had originally sought also to bring claims
against defendants in their official capacities as officers of

alleges that, while he was incarcerated in the Fishkill
Correctional Facility ("Fishkill"), defendants violated his
constitutional rights by failing to attend to his medical needs.
Defendants have moved for summary judgment pursuant to Fed. R.
Civ. P. 56.  For the following reasons, the motion is granted in
part.

BACKGROUND

I.   The Parties

      Unless otherwise noted, the following facts are undisputed.
Plaintiff De Jesus is a prisoner in the custody of the DOC.  At
the time he filed the complaint, he was resident at Fishkill.
Defendant Dr. John Supple ("Supple") is a physician at the
Regional Medical Unit ("RMU") at Fishkill who served as
plaintiff's primary health care provider.  Defendant Dr. Edward
Sottile ("Sottile") is a physician and the Facility Health
Services Director at the Fishkill RMU.  His duties include
supervising all medical treatment and the medical staff at
Fishkill, including Supple.  Defendant Joy Albright ("Albright")
is the Nurse Administrator of the Fishkill RMU, in charge of
supervising the clinical practice of nurses at that facility,
but, according to DOC policies, not a supervisor of the medical
care given by doctors.  Defendant Angie Maume ("Maume") is the

---

the DOC, but withdrew those claims in his affirmation in
opposition to the defendants' motion to dismiss filed November
16, 2009.

Acting Deputy Superintendant of Health Services at the Fishkill
RMU, directing the operations and coordination of support
services at the facility, but not, according to DOC policies,
directing inmate medical care.  Defendant Elizabeth Williams
("Williams") is the Deputy Superintendant of Health Services of
the Fishkill RMU, who like Maume, directs support services at
the Fishkill RMU, not medical care.[2]

II.  Medical Treatment Prior to Arriving at Fishkill

De Jesus alleges a history of medical ailments that dates
back to October 2005 while resident at New York State's Upstate
Correctional Facility.  His various medical complaints started
with a chronic sore throat, and later included eye pain,
problems with eyesight, chronic migraine headaches and continued
sore throat.

While resident at Great Meadows Correctional Facility
("Great Meadows") and, later, Coxsackie Correctional Facility
("Coxsackie") De Jesus received medical care for his throat and
eye complaints.  He was examined by an otolaryngologist (an ear,
nose and throat specialist, or "ENT") in May 2006, when he
underwent a CT scan of his throat and was prescribed medication

---

[2]     In his complaint, De Jesus also asserted claims against
William Connolly, Superintendant of Fishkill; Lester Wright,
Chief Medical Officer of the DOC; and Dr. Ramasree Karri, a
psychiatrist who treated plaintiff.  De Jesus voluntarily
dismissed the claims against these defendants in his opposition
to the defendants' motion to dismiss.

for acid reflux.  He was again seen by an ENT in July 2007.  In response to complaints about chest pains and seeing flickering lights, De Jesus was given an electrocardiogram ("EKG") in November 2006, the results of which were normal.  De Jesus's vision problems were examined by an optometrist in May 2007, who prescribed him glasses, and an ophthalmologist in July 2007, who could not identify anything wrong with his eyes.  His medical history indicates that his first complaint of migraine headaches occurred in July 2007.  De Jesus was also twice examined by psychiatrists in the Office of Mental Health ("OMH") at Great Meadows in November 2006, neither of whom referred him for further mental health services related to his physical symptoms.

III. Plaintiff's Medical Treatment at Fishkill

De Jesus's complaint concerns the medical care he received during his time at Fishkill, where he was transferred in October 2007.  From the beginning of De Jesus's confinement at Fishkill, Supple was assigned to serve as his primary health care provider.  De Jesus was seen regularly by Supple and nurses in the RMU starting very shortly after his transfer to Fishkill.  These visits were first in reference to his complaints of eye and throat pain, and seeing flashing lights.  His medical records show that while at Fishkill, De Jesus consistently exhibited signs of sore throat, including inflammation, red coloration, and increased mucous.  De Jesus was prescribed

Claritin, triamcinolone, albuterol and other allergy medications
that are designed to relieve eye pain and sore throat, among
other symptoms.  He was also given an x-ray of his sinuses to
investigate his complaints of sore throat in November 2007.

De Jesus sent two letters of complaint about his medical
treatment shortly thereafter.  The first, dated November 19,
2007, was sent to Sottile, and referenced his persistent eye
pain and flashing lights in his vision.  The second was dated
December 7, 2007 and sent to Albright, referencing his eye and
throat pain.

De Jesus filed a formal grievance in January 2008 claiming
that he was suffering from serious eye and throat pain and that
Supple was not properly treating his condition.  Nursing staff,
including Albright and Maume, investigated De Jesus's grievance
and provided information to the Inmate Grievance Resolution
Committee ("IGRC"), which reviews such grievances.  In the
report denying De Jesus's complaint, the IGRC referenced his
visits with Supple, the x-ray he received in November 2007 and
the prior medical care plaintiff received at Great Meadows and
Coxsackie as evidence that he had been receiving treatment for
his eye and throat pain.

On February 10, 2008, De Jesus sent a new letter to
Williams, referencing severe eye pain, flashing lights and
headaches.  De Jesus's headaches were referenced in the record

of his March 28 medical exam, the first time they were mentioned in his medical records since arriving at Fishkill.  Supple referred De Jesus for an examination by an ophthalmologist in April 2008.  This exam did not reveal any abnormalities, although the ophthalmologist suggested that plaintiff's eye pain might be connected to his migraines.

De Jesus filed another grievance complaint in June 2008, complaining of eye pain, flashing lights and violent headaches, and requesting an MRI or CT scan.  This grievance was also denied because the IGRC found that De Jesus had been seen by several doctors all of whom had found no "organic basis" for his complaints.  Upon appeal to the DOC Central Office Review Committee, De Jesus was told that he should refer his request to Sottile, who would have authority to authorize alternate treatments.  De Jesus was also informed that he could "request a consultation from an outside provider of his choice by making necessary arrangements and assuming financial responsibility" pursuant to Health Services Policy Manual Item 7.2.

Upon Supple's referral, Dr. Ramasree Karri ("Karri"), a psychotherapist, examined De Jesus in July 2008 but could not identify "any psychiatric condition including somatoform disorders" that could be the root of his ailments.  Karri's evaluation notes indicate that plaintiff told her that his eye ailment "slows me down and hinders my ability to move around."

6

De Jesus alleges that this evaluation, in addition to the earlier psychiatric evaluations conducted at Great Meadows, found that his complaints were not psychological.  He also alleges that Karri advised plaintiff to continue to try to determine the root of his symptoms.  De Jesus maintains that he has never suffered from any psychological problems or taken psychotropic medication.  Karri, however, stated that although she did not identify any obvious psychiatric disorders at the time of her examination, she had not made a medical diagnosis that plaintiff's symptoms "had a diagnosable medical basis or . . . could be alleviated through medical treatment."

Supple again advised De Jesus to seek counseling at OMH during examinations in August and October 2008 because "no physical basis for his symptoms ha[d] been found by several medical providers over 2+ years" and he "advised [De Jesus] to try something new that may help."  De Jesus filed another grievance in August 2008, complaining generally of "medical issues" related to his throat and eyes, and seeking that Supple be removed as his primary care provider.  In the grievance, De Jesus states that Supple had acted rudely and was refusing to meet his medical needs, including by repeatedly referring him to OMH.  Like the prior grievances, this was denied because De Jesus had a history of receiving various types of examinations, medication and other treatment.  The denial memorandum also

7

informed De Jesus that his request for a new primary medical
provider should be referred to Sottile, as the IGRC did not have
authority to change his provider.  On August 25 and September
15, De Jesus sent complaint letters to Sottile referencing
extreme eye pain, visual complications and throat pain.

      In September and October 2008, De Jesus began to complain
again about severe headaches.  A formal grievance he filed on
October 3, which requested a change in medical provider but did
not specify any particular ailments, was denied in the same
manner as his earlier grievances.  In October, De Jesus
requested an MRI or CT scan, or examination by a neurologist,
but Supple did not order these for him.  On October 21, De Jesus
filed another grievance in which he complained that Supple had
an unprofessional and hostile demeanor and that he was being
denied specialized examinations.  De Jesus wrote "I fear my life
is in danger in Dr. Supple's hands."  Responding to this
complaint, Sottile examined De Jesus on November 7.  According
to Sottile's notes from the examination, De Jesus complained
about his chronic sore throat, eye problems and "occasional
headaches."  Sottile identified a persistent sore throat
problem, prescribed a flovent spray pump and suggested that a
gastro-intestinal consult and/or a UGI endoscopy be performed to
assess if De Jesus's sore throat was caused by acid reflux.
Sottile did not recommend any of the specialized examinations

that De Jesus had sought and did not agree that Supple should be removed as his primary care provider.  The IGRC thereafter denied De Jesus's October 21st grievance, finding that Supple had performed his duties appropriately and that no change in medical providers was necessary.  Supple did not order the gastro-intestinal consult or the UGI endoscopy that Sottile had recommended.

In December 2008 and January 2009, De Jesus continued to complain of eye pain, sore throat, headaches and seeing flashing lights in his visits with medical staff.  In January he was prescribed Imitrex, a medication for the treatment of headaches, by a Dr. Mamis, who is not a party in this case.  Supple continued to prescribe De Jesus Imitrex for the next two or three months, as well as lozenges for his sore throat.

De Jesus alleges that his headaches have been entirely untreated by prison medical staff, and that he was never even prescribed over-the-counter pain medication for these headaches. De Jesus alleges that he continues to suffer from severe eye and throat pain and daily migraine headaches.

IV. De Jesus's Medical Care Since the Filing of the Amended Complaint

Both parties have submitted evidence regarding De Jesus's medical care since the amended complaint in this action was filed on February 23, 2009.  Supple continued to be De Jesus's

primary care provider.  In June 2009, De Jesus visited an
optometrist who prescribed him new glasses.  In December 2009,
he was prescribed eye drops and pain medication to address his
eye pain.  By April 2010, De Jesus's eye pain and headaches had
appeared to ameliorate, according to records from his
examination by medical staff.  In June 2010, Sottile referred De
Jesus for a brain CT scan to check for "cranial pathology."

On August 20, 2010, Dr. Joseph Avanzato, the Acting
Facility Health Services Director of Fishkill who replaced
Sottile after his retirement, ordered an MRI for De Jesus, which
would provide a better analysis of any cranial pathology, if it
existed, than a CT scan.  The MRI report indicated that De Jesus
did not suffer from any brain abnormalities such as a tumor or
hemorrhage.  Since at least September 2010, De Jesus has been
prescribed Propranolol, a medication for the treatment of
migraine headaches.

V.   Procedural History

De Jesus filed this action pro se on June 27, 2008.  An
amended complaint was filed on February 23, 2009 and served on
all defendants in April 2009.  The defendants filed a joint
motion to dismiss the amended complaint on July 16, 2009, which
was fully submitted on December 23, 2009.  On January 29, 2010,
it was ordered that the motion to dismiss would be treated as
one for summary judgment under Fed. R. Civ. P. 56, and that

consideration of the motion would take place after the parties made supplemental submissions that included De Jesus's medical and mental health records.  No discovery has been taken in this action, but defendants filed supplemental briefing on summary judgment on June 4, 2010, with declarations attaching plaintiff's health records.[3]  De Jesus submitted briefing and affidavits in August 2010.  Defendants filed their reply brief and further affidavits on September 27, 2010.

DISCUSSION

I.  Summary Judgment Standard

     Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); see El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party.  Celotex Corp. v. Catrett,

---

[3]     Plaintiff complains that defendants did not submit a statement of material facts as to which there is no genuine dispute pursuant to the Southern District's Local Rule 56.1. Because the defendants' motion to dismiss was converted into one for summary judgment, however, they were not required to file such a statement.  See Schnur v. CTC Commc'ns Corp. Grp. Disability Plan, 621 F. Supp. 2d 96, 101 (S.D.N.Y. 2008).

477 U.S. 317, 323 (1986); El Sayed, 627 F.3d at 933.  When the
moving party has asserted facts showing that the non-movant's
claims cannot be sustained, the opposing party must "set forth
specific facts showing that there is a genuine issue for trial,"
and cannot "merely rest on the allegations or denials" contained
in the pleadings.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir.
2009).  That is, the nonmoving party "must do more than simply
show that there is some metaphysical doubt as to the material
facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
U.S. 574, 586 (1986).  Only disputes over material facts --
facts that might affect the outcome of the suit under the
governing law -- will properly preclude the entry of summary
judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986); SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137
(2d Cir. 2009).  It is well established that the submissions of
a pro se litigant must be construed liberally and interpreted to
raise the strongest arguments that they suggest.  Chavis v.
Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation omitted).
The rule favoring liberal construction of pro se submissions is
especially applicable to civil rights claims.  See Weixel v. Bd.
of Ed. of the City of New York, 287 F.3d 138, 146 (2d Cir.
2002).

De Jesus asserts a § 1983 claim against defendants for
deliberate indifference to his serious medical needs in

violation of his Eighth Amendment rights.  De Jesus claims that
defendants were deliberately indifferent to his medical needs by
ignoring his complaints about and failing to treat his chronic
sore throat, eye pain and vision problems, and his chronic
migraine headaches.  He has only demonstrated, however, that
there are genuine disputed issues of fact for trial that
defendants Supple and Sottile may have violated his
constitutional right to receive adequate medical care for
treatment of his migraine headaches.

      Defendants present three arguments why they are entitled to
summary judgment.  First, Albright, Maume and Williams argue
that they had no personal involvement in plaintiff's medical
treatment, and so could not be held liable for any deliberate
indifference of his needs.  In addition, all defendants argue
that there is no genuine issue of material fact suggesting that
there was any deliberate indifference to De Jesus's medical
needs.  Finally, all defendants also claim that they are
entitled to the defense of qualified immunity.  This Opinion
will address each of these arguments in turn.

II.  Personal Involvement

      Albright, Maume and Williams move for summary judgment on
the ground that they were not personally involved in the alleged
deprivation of De Jesus's rights.  Section 1983 provides in part
that

> [e]very person who, under color of any statutes,
> ordinance, regulation, custom or usage, of any State .
> . . subjects, or causes to be subjected, any citizen
> of the United States . . . to deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws shall be liable to the party
> injured.

42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008).

A defendant's conduct must be a proximate cause of the claimed violation in order to find that the defendant deprived the plaintiff of his rights. Martinez v. California, 444 U.S. 277, 285 (1980).  As a consequence, "the doctrine of respondeat superior . . . does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003).  It is thus "well settled" that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (citation omitted). Moreover, on claims of deliberate indifference, a plaintiff must show such indifference on the part of a "particular defendant." Brock v. Wright, 315 F.3d 158, 164 (2d Cir. 2003).

The personal involvement and liability of supervisory

14

personnel is established when the supervisory official has

"actual or constructive notice of unconstitutional practices and

demonstrates gross negligence or deliberate indifference by

failing to act." Meriwether v. Coughlin, 879 F.2d 1037, 1048

(2d Cir. 1989) (citation omitted). Thus, a plaintiff may

establish a supervisor's personal involvement by showing that:

> (1) the defendant participated directly in the
> alleged constitutional violation, (2) the defendant,
> after being informed of the violation through a
> report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the
> continuance of such a policy or custom, (4) the
> defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5)
> the defendant exhibited deliberate indifference . . .
> by failing to act on information indicating that
> unconstitutional acts were occurring.

Back v. Hastings on Hudson Union Free School Dist., 365 F.3d

107, 127 (2d Cir. 2004) (citation omitted).[4]

De Jesus has not asserted that Albright, Maume and Williams

were directly involved in De Jesus's medical treatment. De

Jesus argues that they should be liable because during the

---

[4]    The Supreme Court's decision in Ashcroft v. Iqbal, 129
S.Ct. 1937 (2009), which found that a supervisor can be held
liable only "through the official's own individual actions", id.
at 1948, arguably casts doubt on the continued viability of some
of the categories set forth in Hastings on Hudson.  See Qasem v.
Toro, No. 09 Civ. 8361 (HHS), 2010 WL 3156031, at *3 (S.D.N.Y.
Aug. 10, 2010) ("The Second Circuit has not yet addressed how
Iqbal affects the five categories of conduct that give rise to
supervisory liability . . . ."). For the purposes of this case,
however, it is not necessary to explore this issue, because
Albright, Maume and Williams were not supervisors of the
defendants primarily responsible for the alleged violation.

grievance investigations, they maintained that his complaints were psychological in nature despite their awareness of his prior "negative psychological evaluations."  De Jesus also argues that these defendants had supervisory responsibilities over the medical care provided by Supple, his primary care provider.  With this awareness and responsibility, De Jesus argues, Albright, Maume and Williams had a duty to overrule Supple's denial of care and reject his assessment that the medical treatments De Jesus requested should be denied because his ailments had a psychological root.

De Jesus's characterization of the situation is not supported by the facts in three respects.  First, Albright, Maume and Williams did not play either a direct or supervisory role in De Jesus's treatment, and therefore cannot be held liable for any deficiencies in his medical care.  The letters De Jesus sent to Albright and Williams, to which they did not respond, are insufficient to provide evidence of personal involvement.  As De Jesus concedes, their relevant actions were limited to conducting the investigations that would inform the IGRC's review of De Jesus's grievances.[5]  This advisory role is

---

[5]   Even if they had been voting members of the IGRC that had denied De Jesus's grievances, under Second Circuit law, it is "questionable" whether a denial of an inmate's grievance constitutes sufficient personal involvement to make him liable. McKenna v. Wright, 386 F.3d 432, 437-38 (2d Cir. 2004) (citing Joyner v. Greiner, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002)

confirmed by the grievance reports.  De Jesus's failure to
demonstrate any genuine issue suggesting that Albright, Maume or
Williams were personally involved in any deprivation of his
rights means that these defendants are entitled to summary
judgment.

Second, there is no evidence that the rationale for the
denial of De Jesus's grievance was any opinion that his ailments
were psychological rather than physical.  Instead, the grievance
committee denials each were based on a finding that De Jesus was
receiving adequate medical treatment for his ailments.
Therefore, the investigation by the grievance committee took
under consideration the medical opinion of Supple that De Jesus
was receiving adequate treatment, not, as De Jesus argues, an
opinion that plaintiff's ailments were psychological.[6]  De Jesus
has provided no evidence that Albright, Maume and Williams ever
denied De Jesus medical care because they "deliberately
maintained" that his ailments were psychological, nor any basis

---

(dismissing claim against superintendant whose involvement was
limited to denying grievance regarding inadequate medical
care)).

[6]    De Jesus attempts to characterize Supple's alleged opinion
that his ailments had a psychological root as an "opinion
(belief)" because Supple is not a psychotherapist, and that this
"opinion" does not deserve the same kind of deference as a
"diagnosis" Supple would make as a medical doctor.  Plaintiff
provides no support for why this particular opinion, if in fact
it was held by Supple, would not be a professional medical
opinion or less deserving of deference by non-medical personnel.

to believe that discovery would provide such evidence.  The grounds for the denial of De Jesus's grievances are documented, those documents have been produced, and they do not support De Jesus's arguments.

Finally, although De Jesus argues that Albright, Maume and Williams are supervisory personnel responsible for medical care at Fishkill, they are not supervisors of the individuals whom De Jesus alleges were most directly responsible for violating his constitutional rights -- doctors Supple and Sottile.  Rather, these individuals are nurses who supervise some nursing and administrative staff, not the doctors in the RMU.  Therefore, De Jesus cannot rely on the legal test for a supervisor's personal involvement to find Albright, Maume and Williams liable for any deprivation of his rights.

III. Deliberate Indifference

    A. Standard

    Although the "Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care," it is well-established that "not every lapse in medical care is a constitutional wrong."  Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 832, 844 (1994)).  "Rather, a prison official violates the Eighth Amendment only when two requirements are met."  Salahuddin, 467 F.3d at 279 (citation omitted).  The first requirement is that

the alleged deprivation must be "sufficiently serious."  Id.
(citation omitted).  The second requirement is that "the charged
official must act with a sufficiently culpable state of mind."
Id. at 280.

The first requirement is objective: "[o]nly deprivations
denying the minimal civilized measure of life's necessities are
sufficiently grave to form the basis of an Eighth Amendment
violation."  Id. at 279 (citation omitted).  Determining whether
a deprivation is "sufficiently serious" requires two inquiries.
First, a court must determine "whether the prisoner was actually
deprived of adequate medical care."  Id.  "As the Supreme Court
has noted, the prison official's duty is only to provide
reasonable care."  Id. (citing Farmer, 511 U.S. at 844-47).  An
inmate is not entitled to treatment by every available medical
alternative as long as his treatment is reasonable.  Estelle v.
Gamble, 429 U.S. 97, 107 (1976).  Furthermore, a "mere
disagreement over the proper treatment does not create a
constitutional claim.  So long as the treatment given is
adequate, the fact that a prisoner might prefer a different
treatment does not give rise to an Eighth Amendment violation."
Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).
Nonetheless, even if a plaintiff receives "extensive" and
"comprehensive, if not doting, health care," he may still be
able to identify deficiencies in care that establish a

deliberate indifference claim, particularly when the issue is a failure to treat pain.  Archer v. Dutcher, 733 F.2d 14, 16 (2d Cir. 1984).

Second, a court must determine "whether the inadequacy in medical care is sufficiently serious."  Salahuddin, 467 F.3d at 280.  "This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  Id. (citation omitted).  If the inadequacy at issue is "a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's [underlying] medical condition is sufficiently serious."  Id.  If, however, "the inadequacy is in the medical treatment given, the seriousness inquiry is narrower."  Id.  Then, "it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes."  Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003).  Even in cases where an inmate "suffers from an admittedly serious medical condition," if the alleged deficiencies in treatment are "minor and inconsequential," those lapses will not sustain an Eighth Amendment claim.  Id.  "[T]he actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the

denial of treatment subjected the prisoner to a significant risk of serious harm." Id. at 187.

"Because the objective component of an Eighth Amendment claim is necessarily contextual and fact-specific, the serious medical need inquiry must be tailored to the specific circumstances of each case." Id. at 185 (citation omitted). Courts use a number of factors to determine whether a medical condition is serious. These factors, which are also instructive in determining whether the medical consequences of a denial of certain treatment are serious, include: "whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." Salahuddin, 467 F.3d at 280 (citation omitted).

The second requirement for an Eighth Amendment violation is subjective: the prison official must act with a "sufficiently culpable state of mind." Salahuddin, 467 F.3d at 280 (citation omitted); see also Caiozzo v. Koreman, 581 F.3d 63, 71 (2d Cir. 2009). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." Salahuddin, 467 F.3d at 280 (citation omitted). "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Id. (citation omitted). This means that the

21

prison official "must be subjectively aware that his conduct creates such a risk." Id. at 281 (citation omitted).

Prison medical staff is given wide discretion in determining how to treat inmates.  In this context, "[t]he decisions of physicians regarding the care and safety of patients are entitled to a presumption of correctness." Kulak v. City of New York, 88 F.3d 63, 77 (2d Cir. 1996) (citation omitted); Church v. Hegstrom, 416 F.2d 449, 450 (2d Cir. 1969) (Section 1983 "does not authorize federal courts to interfere in the ordinary medical practices . . . of state prisons.").  As such, a disagreement between an inmate and medical personnel over the course of treatment does not give rise to a deliberate indifference claim.  Chance, 143 F.3d at 703.  A showing of medical malpractice is therefore insufficient to support a deliberate indifference claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." Id. (citation omitted).

The defendants argue that De Jesus has failed, first, to allege that he suffered from a "sufficiently serious" condition, or that he was deprived of any medical care for his ailments. Salahuddin, 467 F.3d at 280 (citation omitted).  They also argue that De Jesus has failed to allege that the named individual defendants "act[ed] with a sufficiently culpable state of mind."

22

Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (citation omitted).  The defendants argue that his allegations amount to, at most, a claim of negligence.  Defendants are successful in showing that with respect to his sore throat and eye pain, De Jesus has failed to show that he suffered from a deprivation of medical care.  But, De Jesus has put forward sufficient facts to raise a material question whether Supple and Sottile deprived him of medical care related to his complaint of chronic migraine headaches, and did so with a sufficiently culpable state of mind.  Supple and Sottile, therefore, are not entitled to summary judgment with regard to the medical care provided for De Jesus's migraine headaches.

> B. Deprivation of Medical Care in Connection with a
> Sufficiently Serious Medical Condition

> 1. Sore Throat, Eye Pain and Visual Problems

Defendants argue that De Jesus's chronic sore throat, eye pain and visual problems do not rise to the level of a "serious medical condition" as required under analysis of an alleged Eighth Amendment violation.  Smith, 316 F.3d at 186.  De Jesus does not attempt to demonstrate why these ailments should be so classified, instead focusing on the debilitating effects of his chronic headaches.  Moreover, De Jesus has failed to show that he was "actually deprived of adequate medical care" for these ailments.  Salahuddin, 467 F.3d at 279.

During his incarceration at Fishkill and immediately before, De Jesus was consistently treated for his sore throat and eye complaints.  He was given medication that targeted these ailments and was examined by specialists, including ENTs, ophthalmologists and optometrists, who investigated the source of his symptoms.  De Jesus was given a CT scan, an X-ray, and an EKG.  Sottile provided further care by prescribing De Jesus a flovent spray pump.

Against this medical history, De Jesus's allegations that he was not treated for these symptoms are truly only complaints that he was not satisfied with the exact method of treatment given or the results achieved.  See Chance, 143 F.3d at 703. Although De Jesus claims that Supple denied him medical care because of Supple's belief that De Jesus's ailments were psychological, this is contradicted by the record showing that in addition to his referrals to OMH, Supple and other medical providers provided continuous medical care with respect to his sore throat, eye pain and vision problems.  Even if De Jesus's medical care providers could arguably have provided De Jesus with further specialist examinations or medication, such as the UGI endoscopy or the gastro-intestinal consult suggested by Sottile, this is merely a disagreement about a medical judgment, not evidence of a deprivation of care.  See Estelle, 429 U.S. at 107.  The claims related to sore throat, eye pain and vision

problems are therefore insufficient to withstand summary
judgment.  See Wright, 554 F.3d at 266.

     2. Chronic Migraine Headaches

The lack of treatment of De Jesus's chronic migraine
headaches leads to the opposite conclusion.  First, chronic
migraine headaches are often found to be "sufficiently serious"
to warrant constitutional protection.  See Benjamin v. Kooi, No.
07 Civ. 0506, 2010 WL 985844, at *7 (N.D.N.Y. Feb. 25, 2010)
(collecting cases); Moriarty v. Neubould, No. 02-CV-1662, 2004
WL 288807, at *2 n.2 (D. Conn. Feb. 10, 2004) (migraine
headaches constitute a sufficiently serious condition because
they can be "extremely painful and debilitating").  Plaintiff
alleges that these headaches caused him severe and constant
pain, and were "so serious and violent that at times he [was]
unable to work, read, write, or leave his cell are for [sic]
meals or activities. . . . [T]hey significantly affect[ed]
plaintiff's daily activities."  Defendants do not contest that
De Jesus is suffering from headaches, nor do they argue that
they do not cause him severe pain or affect his daily
activities.  Therefore, De Jesus has satisfied the "serious
medical condition" requirement as to his complaints of chronic
migraine headaches.  See Salahuddin, 467 F.3d at 280.

Second, there is no record of any treatment being given for
his headaches between February 10, 2008, when he first

complained of them once at Fishkill (through a letter of
complaint), and January 23, 2009, when Dr. Mamis prescribed
Imitrex, a migraine medication.[7]  Even taking into account some
ambiguities in the record, it appears that De Jesus's chronic
migraine headaches went completely untreated for over eleven
months.[8]  This "failure to provide any treatment for an inmate's
medical condition," where the underlying "condition is
sufficiently serious," satisfies the objective requirement of
the deliberate indifference claim.  Id.  Even though De Jesus
has been prescribed medicines to address chronic migraine
headaches since 2009 and underwent an MRI in 2010 which
determined that he did not suffer from a brain abnormality that
might require more aggressive treatment, De Jesus has raised a
material question that the eleven-month delay in treatment was a
sufficiently serious deprivation, precluding the grant of
summary judgment.  See Salahuddin, 467 F.3d at 281 (refusing to

---

[7]    In his medical records, De Jesus first complained of
headaches in July 2007, but they were not mentioned in his
medical records once he arrived at Fishkill until March 28,
2008.  After that date, his reports of headaches were not as
consistent as his complaints of sore throat and eye pain, but
his medical records show that he told medical staff that he was
experiencing migraine headaches in July, September, October and
December 2008, and January 2009.

[8]    Although De Jesus was referred to OMH in July 2008,
defendants do not argue that this referral was made to address
De Jesus's complaints of headaches.  The documents produced by
defendants indicate that the purpose of the referral was to
determine if there was a psychological root of De Jesus's eye
pain and vision problems.

find as a matter of law that it was reasonable to postpone treatment for Hepatitis C for five months).

Defendants cite to Woods v. Goord, No. 01 Civ. 3255 (SAS), 2002 U.S. Dist. LEXIS 19371, at *21 (S.D.N.Y. Oct. 10, 2002), to argue that De Jesus's allegations fail to recognize the sustained medical treatment he received while at Fishkill, and that his allegations are mere disagreement about proper treatment.  Similarly, citing Estelle, 429 U.S. at 106, defendants argue that De Jesus's claims are merely complaints that the medical treatment he received was unsuccessful at alleviating his symptoms.  But these arguments are not targeted to address the lack of treatment of De Jesus's headaches for eleven months; instead, defendants gloss over this delay and concentrate on his throat and eye symptoms or speak generally about his complaints.  In both Estelle and Woods, the plaintiff had unquestionably received treatment for the condition at issue.  See Estelle, 429 U.S. at 107; Woods, U.S. Dist. LEXIS 19371, at ** 20-21.  Defendants do not claim that De Jesus was given any treatment for his headaches until January 2009.[9]  These

---

[9]    Although Sottile stated in his declaration that "efforts have been made to reduce" De Jesus's migraine headaches, the only pain relieving medications he mentioned were "Ibuprofen, Motrin, Imitrex."  De Jesus's records indicate that Imitrex was not prescribed until January 2009.  Ibuprofen -- the generic name for Motrin and the term used in his prescription chart -- was prescribed by a Dr. Williams in fall 2008 for pain associated with dental issues, including wisdom tooth extraction

arguments are therefore unavailing in the context of the complete failure to treat a condition for eleven months.

C. Subjective Element

It having been found that there was no serious deprivation of medical care with regard to his throat and eye complaints, analysis of the subjective element of De Jesus's deliberate indifference claim need only consider whether Supple and Sottile had a "sufficiently culpable state of mind" in denying him care for his chronic migraine headaches.  Salahuddin, 467 F.3d at 280.  It is not necessary to find that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," only that he "evince[d] a conscious disregard of a substantial risk of serious harm." Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (citation omitted).

De Jesus has introduced evidence to raise a genuine question that Supple and Sottile failed to treat his chronic migraine headaches while actually aware of a substantial risk that De Jesus would suffer serious harm.  If, as the evidence suggests, the doctors failed to attempt any treatment of De Jesus's headaches for over eleven months, this was an "unnecessary and wanton infliction of pain."  Farmer, 511 U.S.

and toothaches.  There is no evidence of ibuprofen being prescribed for the purpose of treating De Jesus's headaches before January 2009.

at 834.  It is undisputed that Supple was aware of De Jesus's complaints of migraines, as they were noted in his medical records throughout 2008 after March 28 and in the grievance De Jesus filed referencing Supple's medical care in June 2008. Sottile acknowledged that he was aware of De Jesus's complaints from his consultations with Supple and noted that De Jesus suffered headaches in the report from his examination in November 2008.  De Jesus alleges that his migraines were a topic he discussed with Sottile at the examination.

The defendants argue that De Jesus's complaints only describe a lack of due care or negligence, which is insufficient to sustain a deliberate indifference claim.  LaBounty v. Coughlin, 137 F.3d 68, 72-73 (2d Cir. 1998).  They further cite to Wilson v. Seiter, 501 U.S. 294, 298-303 (1991), to support their argument that De Jesus has not presented evidence to satisfy the "wantonness" requirement of a deliberate indifference claim.  LaBounty and Wilson require that a plaintiff present evidence that "the defendants knew of the health dangers and yet refused to remedy the situation." LaBounty, 137 F.3d at 73 (citing Wilson, 501 U.S. at 302-04).

De Jesus has presented medical records that show that Supple and Sottile were aware of De Jesus's complaints of migraine headaches and did not order any treatment.  Although there is no specific evidence that the doctors were aware that

there was a risk of continued pain in the absence of medication
or other treatment for the migraine headaches, this can be
inferred from the fact that such a risk is obvious.  <u>Farmer</u>, 511
U.S. at 842.  Supple and Sottile might have rebutted this
inference by showing that they "knew the underlying facts but
believed . . . that the risk to which the facts gave rise was
insubstantial or nonexistent," <u>id.</u> at 844, but they have not
presented evidence to support such a rebuttal.  Just as in
LaBounty, where the Second Circuit affirmed the district court's
decision not to grant summary judgment, the defendants here have
not pointed to contrary evidence sufficient to show there is no
genuine issue of material fact that they failed to treat a
condition that was a danger to De Jesus's health.

Defendants also argue that there is a "presumption of
correctness" for "decisions of physicians regarding the care and
safety of patients."  <u>Kulak</u>, 88 F.3d at 77.  The physicians'
decision in <u>Kulak</u> to move the plaintiff to a new ward, however,
was supported by their reasoning that this move was needed
because his treatment team worked there.  Therefore, the <u>Kulak</u>
defendants supported this presumption of correctness by stating
a reason for the challenged action.  Here, Supple and Sottile
have failed to provide a basis for their decision to not treat
De Jesus's headaches for eleven months.  Without more from the
defendants, the presumption of correctness is overcome by the

obvious risk attached to a failure to provide medical care for migraine headaches.

De Jesus spends a great deal of time in his briefs arguing that Supple's decision not to treat De Jesus's headaches was rooted in a belief that his condition was psychological and not caused by a pathology that could be addressed by non-mental health medical treatments.  He cites to <u>Wood v. Sun</u>, 865 F.2d 982 (9th Cir. 1998), where the Ninth Circuit found that defendant doctors had been deliberately indifferent to an inmate's medical needs by refusing him treatment because they attributed his complaints to mental health issues.  <u>Id.</u> at 990. In addressing this argument, defendants argue only that "there is no basis to infer from the record that Dr. Supple took the position that plaintiff's complaints <u>about his throat</u> were psychological . . ." (emphasis supplied).  As defendants have not specifically addressed whether Supple or Sottile declined to treat De Jesus's <u>headaches</u> due to a belief that they had a psychological, not a physical, cause, and because even if this was the reason for the lack of treatment, they have not presented any argument that this was a reasonable medical judgment, De Jesus has raised a genuine issue of material fact that precludes summary judgment on the subjective element.[10]

_____

[10]  De Jesus also presented several affidavits to support his contention that the subjective element was satisfied, at least

IV.  Qualified Immunity

     The defendants also argue that they have qualified immunity from liability.  Qualified immunity shields government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Tracy v. Freshwater, 623 F.3d 90, 95-96 (2d Cir. 2010) (citation omitted).  "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Faghri v. Univ. of Connecticut, 621 F.3d 92, 97 (2d Cir. 2010) (citation omitted).  Because qualified immunity is both "a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation," Iqbal, 129 S.Ct.

---

in part, by Supple's allegedly rude behavior or hostility towards him.  As defendants argue at length in their reply memorandum, rude behavior has never been found to be sufficient to make a defendant liable for deliberate indifference.  See Smith v. Goord, No. 9:08 Civ. 1364 (NAM/RFT), 2010 WL 3488148, at *6 (N.D.N.Y. Aug. 9, 2010) ("[V]erbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983.") (citation omitted).  This evidence, therefore, does not need to be factored into the analysis here at all.  De Jesus has sufficiently shown that there is a genuine dispute precluding summary judgment without any affidavits concerning Supple's attitude or allegedly insensitive statements.  Indeed, De Jesus made no allegations that Sottile acted in anything but a professional manner, yet summary judgment is also precluded on the claim against him.

at 1946 (citation omitted), it should be determined early in the proceedings if possible. <u>Cowan ex rel. Estate of Cooper v. Breen</u>, 352 F.3d 756, 760 (2d Cir. 2003).

In evaluating a defense of qualified immunity, the first inquiry is whether, viewing the facts alleged in the light most favorable to the plaintiff, there was a constitutional violation. <u>Clubside, Inc. v. Valentin</u>, 468 F.3d 144, 152 (2d Cir. 2006). The next questions are whether that right was clearly established at the time the challenged decision was made, and whether the defendants' actions were objectively unreasonable. <u>Harhay v. Town of Ellington Bd. of Educ.</u>, 323 F.3d 206, 211 (2d Cir. 2003). A constitutional right is "clearly established" where "(1) the law is defined with reasonable clarity; (2) the Supreme Court or the Second Circuit has recognized the right; and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." <u>Reuland v. Hynes</u>, 460 F.3d 409, 420 (2d Cir. 2006) (citation omitted). Courts need not address these questions in this particular order, although "it is 'often beneficial' to do so." <u>Finnigan v. Marshall</u>, 574 F.3d 57, 61 n.3 (2d Cir. 2009) (citing <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S.Ct. 808, 818 (2009)).

As described above, De Jesus has established a violation of his Eighth Amendment right to adequate medical care with respect

to his chronic migraine headaches.  This is a right that has
been defined with sufficient specificity and clearly established
by the Supreme Court and Second Circuit.  See Estelle, 429 U.S.
at 104; Salahuddin, 467 F.3d at 279.  De Jesus has raised a
genuine issue of material fact with regard to the reasonableness
of Supple and Sottile's approach to his chronic migraine
headaches, presenting evidence suggesting that they failed to
provide any treatment for these headaches for over eleven
months.

     In support of their contention that Supple and Sottile are
entitled to qualified immunity, defendants argue only that the
doctors' "actions were objectively reasonable in that they were
exercising their medical judgment" without further elaboration.
This bald assertion does not provide an adequate ground for
finding that Supple or Sottile would have been reasonable in
believing that a failure to treat chronic migraine headaches was
not a violation of De Jesus's Eighth Amendment rights, and
certainly provides no evidence that would indicate that there is
no dispute about this material issue.  Thomas v. Roach, 165 F.3d
137, 143 (2d Cir. 1999) ("Summary judgment on qualified immunity
grounds is not appropriate when there are facts in dispute that
are material to a determination of reasonableness.") (citation
omitted).

     Sottile and Supple also argue that plaintiff has provided

no evidence of a doctor disagreeing with their course of treatment for De Jesus's complaints.  First, the record on this point is not at all clear.  Dr. Mamis prescribed Imitrex for De Jesus's migraine headaches in January 2009, whereas Supple and Sottile had not taken any action with regard to this complaint.  Whether or not this prescription is evidence of an actual disagreement depends on circumstances surrounding Dr. Mamis's evaluation that are not yet developed in the record.  Secondly, it is not the burden of plaintiff to show an actual disagreement between doctors to defeat a claim of qualified immunity.  Rather, qualified immunity should be granted when defendants have shown that a fact finder could find that "reasonable officers would disagree about the legality of the defendant[s'] conduct under the circumstances."  Poe v. Leonard, 282 F.3d 123, 133 (2d Cir. 2002) (citation omitted).  There is a genuine question whether reasonable doctors could have different opinions about the reasonableness of Supple and Sottile's actions and about whether not treating De Jesus's migraine headaches for over eleven months was deliberate indifference to his medical needs.  Qualified immunity, therefore, cannot be granted on this ground.

CONCLUSION

Defendants' motion for summary judgment is granted in full as to Albright, Maume and Williams.  Summary judgment is also granted as to Supple and Sottile for De Jesus's deliberate indifference claim related to his complaints of sore throat, eye pain and vision problems.  Summary judgment is denied as to Supple and Sottile for De Jesus's deliberate indifference claim related to his complaint of chronic migraine headaches.

SO ORDERED:

Dated:    New York, New York
          March 9, 2011

_____
                  DENISE COTE
          United States District Judge

36

COPIES MAILED TO:

William De Jesus
01-A-4505
Auburn Correctional Facility
PO Box 618
Auburn, NY 13024

Jeb Harben
Assistant Attorney General
State of New York
Office of the Attorney General
120 Broadway
New York, NY 10271-0332